## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-1049


ALPHONSE WILLIAMS, CAROLYN WILLIAMS and
WILLIAM ABROMS

VERSUS

PIONEER FISHING & RENTAL TOOLS, INC., ET AL.


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 88-4927
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


## MARC T. AMY
## JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of Sylvia R. Cooks, Marc T. Amy, and James T. Genovese, Judges.


**AFFIRMED.**


William J. Friedman, Jr.
Robert M. Francez
Voorhies & Labbé
Post Office Box 3527
Lafayette, LA   70502
(337) 232-9700
COUNSEL FOR DEFENDANTS/APPELLEES:
    Robert Eugene Rowe
    V. L. Auld & Associates
    Van L. Laud
    V.L. Auld

**Henry T. Dart**
**510 North Jefferson Street**
**Covington, LA 70433**
**(985) 809-8093**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Alphonse Williams**
    **Carolyn Williams**
    **William Abroms**

**Peter M. Meisner**
**Matthew K. Brown**
**Sullivan, Stoiler & Resor**
**909 Poydras Street, Suite 2600**
**New Orleans, LA 70112**
**(504) 561-1044**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Alphonse Williams**
    **Carolyn Williams**
    **William Abroms**
    **Robert Eugene Rowe**

**Gus A. Fritchie, III**
**Montgomery, Barnett, Brown, Read, Hammond & Mintz**
**3200 Energy Centre**
**1100 Poydras Street**
**New Orleans, LA 70163-3200**
**(504) 585-3200**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Rollins Hudig Hall of New York**

**Calvin T. Guidry**
**Cole & Guidry**
**405 West Main Street**
**Lafayette, LA 70501**
**(337) 232-6183**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Premier Bank, NA**

**Gregory J. Laborde**
**Laborde & Laborde**
**Post Office Box 52564**
**Lafayette, LA 70505-2564**
**(337) 232-9928**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Rowe & Laborde**
    **New England Insurance Company**
    **Robert Eugene Rowe**

John V. Baus, Jr.
Baus, Hammond & Daly
203 Carondelet, Suite 210
New Orleans, LA   70130
(504) 299-8080
COUNSEL FOR DEFENDANT/APPELLEE:
    New England Insurance Company


Kenneth A. Back
Post Office Box 51778
Lafayette, LA 70505-1778
(337) 237-3429
COUNSEL FOR DEFENDANTS/APPELLEES:
    Robert Eugene Rowe
    Pioneer Fishing & Rental Tools, Inc.
    E. F. Realty Company, Inc.
    Thomas B. Falgout, Sr.
    Team Engineering & Manufacturing Co., Inc.
    Carmer B. Falgout
    Falgout Family Trust
    W. Simmons Sandoz

James J. Hautot, Jr.
Judice & Adley
Post Office Drawer 51769
Lafayette, LA   70503
(337) 235-2405
COUNSEL FOR DEFENDANTS/APPELLEES:
    First State Insurance Company
    New England Reinsurance Company

Carroll L. LeBouef
Agent for Service
704 Patrick Street
Broussard, LA   70518
FOR DEFENDANT/APPELLEE:
    Teena Huval Sparks

Charles Gordon-Seymour
Agent for Service
4 Executive Park Drive, Suite 2301
Atlanta, GA 30329
FOR DEFENDANT/APPELLEE:
    Victoria Insurance Company

AMY, Judge.

The plaintiff, judicial liquidator of Pioneer Fishing & Rental Tools, Inc.[1], filed suit against the accounting firm that prepared the corporation's annual audit for a number of years. The plaintiff alleged that the defendant failed to include sufficient information in the audits so as to reveal alleged conflicts that resulted in losses to the corporation. The defendant and its insurer filed exceptions of prescription. The exceptions were granted due to the trial court's determination that the plaintiff was in possession of sufficient information to excite his attention to the alleged conduct more than one year before filing suit. The plaintiff appeals. We affirm.

## Factual and Procedural Background

The plaintiff, Alphonse Williams, is a shareholder in Pioneer Fishing & Rental Tools, Inc. (Pioneer). In September 1988, Mr. Williams, along with other minority shareholders, filed a petition for involuntary liquidation of the corporation. He was subsequently appointed the judicial liquidator for Pioneer. In September 1989, Mr. Williams, as judicial liquidator, filed suit against the accounting firm of V.L. Auld & Associates, V.L. Auld, and Van L. Auld (Auld), alleging malpractice on the part of the accounting firm. Auld's insurers, First State Insurance Company and New England Reinsurance (Insurers), were also named as defendants. The plaintiff asserted that the accounting firm failed to adequately reveal transactions and relationships pertinent to the corporation that would have revealed alleged conflicts between the corporation and the majority shareholder company, which was owned by Thomas Falgout.

Auld filed a motion for summary judgment and an exception of prescription,

---

[1] The corporation's name is referred to in the record both as "Pioneer Fishing Rental Tools, Inc." and "Pioneer Fishing & Rental Tools, Inc." For discussion, we refer to the corporation by the latter title as this is the name reflected on the evidentiary filings in the record.

alleging that a one-year prescriptive period is applicable to accounting malpractice and that the alleged malpractice occurred more than one year before the filing of suit. The trial court granted the exception of prescription. The trial court granted a similar exception filed by the Insurers.

Mr. Williams appeals the granting of the exceptions.

**Discussion**

Mr. Williams argues that the Auld audits, conducted from 1980 through 1987, failed to adequately disclose the extent of Pioneer's transactions/relationships with Mr. Falgout and entities controlled by him. Mr. Williams contends that it was not until he was appointed judicial liquidator in 1988 that he had sufficient information to pursue the claims. He argues that his initial investigation of the corporation's books was not completed until March or April of 1989 and that the action against Auld, filed in September 1989, was therefore timely. Mr. Williams contends that he received further necessary information from the November 2003 report of Michael Daigle, an accountant who reviewed the Auld audits.

In pertinent part, La.R.S. 9:5604 provides as follows with regard to filing periods applicable to accounting malpractice claims:

> A. No action for damages against any accountant duly licensed under the laws of this state, or any firm as defined in R.S. 37:71, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide professional accounting service shall be brought unless filed in a court of competent jurisdiction and proper venue *within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.*
>
> B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act,

2

omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

C. Notwithstanding any other law to the contrary, in all actions brought in this state against any accountant duly licensed under the laws of this state, or any firm as defined in R.S. 37:71, whether based on tort or breach of contract or otherwise arising out of an engagement to provide professional accounting service, the prescriptive and peremptive period shall be governed exclusively by this Section and the scope of the accountant's duty to clients and nonclients shall be determined exclusively by applicable Louisiana rules of law, regardless of the domicile of the parties involved.

D. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.

(Emphasis added.) *See also Picard v. Vermilion Parish Sch. Bd.*, 00-1222 (La.App. 3 Cir. 4/4/01), 783 So.2d 590, *writ denied*, 01-1346 (La. 6/22/01), 794 So.2d 794 (wherein a panel of this court noted that a plaintiff who has information sufficient to excite attention and prompt further inquiry is deemed to have constructive knowledge sufficient to commence a prescriptive period. Ignorance attributable to the plaintiff's own willfulness or neglect is insufficient to halt the running of the period.)

Although counsel for Mr. Williams repeatedly returned to Mr. Williams acquiring knowledge of the alleged omissions after he became judicial liquidator, the trial court focused on the totality of his knowledge throughout the period covered by the audits and whether that was sufficient to excite his knowledge as to the alleged wrongdoing. The trial court recognized not only Mr. Williams's knowledge of the alleged relationships/transactions during the years in question, but that of Teena

3

Huval, the Director of Administration at Pioneer. The trial court first addressed Mr. Williams's argument that the audits omitted information that would have further excited his attention, the trial court stated:

> Well, again, that's your position, that it's missing because the auditors didn't put it in the report. They put many things in the report that relate to these issues. And you've picked out some things that you say should have additionally been included.
>
> But the question that I have to consider is whether, when you take all of this as a whole, was Mr. Williams in a position, long before this period where he became liquidator, that he had sufficient information to excite further inquiry, and that he - - he's therefore imputed with the knowledge that he would have obtained had he made that further inquiry.

The trial court later explained:

> But, as you know, the test is not whether he knew. The test is whether he had enough information that he should have had his attention drawn to it and that he should have - - it should have prompted further inquiry.
>
> And it's imputed to him that he would have knowledge of anything and notice of anything which he could have obtained from making that reasonable inquiry.
>
> In reviewing this evidence as a whole - - and it is voluminous - - but it is clear to me that a reasonable individual would have had sufficient information in Mr. Williams' place to excite his attention and to prompt further inquiry, as well as the corporation had notice - - because, again, we're talking about the rights of the corporation - - through the other employee . . . [Ms. Huval.] And so the Court finds that the exception of prescription is well founded, because I find that Mr. Williams and the corporation, through Ms. Huval, did have sufficient information to excite their attention and to prompt further inquiry, and that they are imputed with the knowledge they could have easily obtained through the records of the corporation had they gone and looked at them. So I'm going to sustain the exception.

When evidence is introduced at a hearing on an exception of prescription, as it was here, the trial court's findings of fact related to the exception are reviewed on appeal pursuant to the manifest error standard of review. *Carter v. Haygood*, 04-0646

4

(La.1/19/05), 892 So.2d 1261. Having reviewed the record, we find no manifest error in the trial court's determination.

As noted in the factual background, Mr. Williams was a minority shareholder in Pioneer throughout the 1980 to 1987 period and served on its board of directors from 1986 through 1988. He previously served as Pioneer's president for much of the 1970s. Therefore, he was knowledgeable of the company and was in a position to act on suspicions he had about Mr. Falgout and his relationships with Pioneer, many of which Mr. Williams acknowledged being aware of. In his deposition, he explained that, by mid-1980 and through the time period in question, he viewed Mr. Falgout and those transactions involving him with distrust. Despite these suspicions, the fact that the relationships and transactions complained of were discussed at shareholder meetings, and the fact that the Auld audits did, in fact, reveal related-party transactions, Mr. Williams explained that he did not pursue acquiring further information as he felt that his inquiries and requests would be met with reluctance by Mr. Falgout. He further explained that hiring a lawyer to acquire additional information would be costly.[2] Given Mr. Williams's acknowledgment that he had a high level of suspicion, that he was aware of many of the transactions at issue, and

---

[2] The trial court commented during the hearing that:

> Well, I think what the law requires of an individual is that, if there is information that comes to light which is sufficient to excite further inquiry, that your failure to follow up is not excusable for purposes of prescription.
> And one of the main things that concerns me about Mr. Williams' position is that, during most of this period of time, he was sitting in a position where he was a director of the corporation. And so he had not just a personal curiosity about it, but he actually had a duty as a director to follow through.
> And his statement that, well, I was not then given the information that was requested - - He was in a position to get the information had he pushed for it, both in a position as a shareholder and then, in some instances, his position as a director.
> And there's nothing in the record to show that he ever went and took advantage of those opportunities, despite the fact that he was very suspicious of all of this activity.

5

the fact that the Auld audits confirmed the existence of some of said transactions, we find no manifest error in the trial court's determination that Mr. Williams either knew of or should have known of any inadequacies in the audits in question more than one year before the filing of suit in this matter.

Mr. Williams's argument on the exceptions of prescription lacks merit.

**DECREE**

For the foregoing reasons, the trial court's granting of the exceptions of prescription is affirmed. All costs of this appeal are assigned to the appellant, Alphonse Williams, in his capacity as judicial liquidator of Pioneer Fishing & Rental Tools, Inc.

**AFFIRMED.**